**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Ross William MONTGOMERY and Gordon Montgomery, Defendants-Appellants.**

**No. 72–1801.**

United States Court of Appeals, Ninth Circuit.

March 30, 1973.

* Honorable Spencer Williams, United States District Judge, Northern District of California, sitting by designation.

1. The concept of "aboriginal title" is defined by the Supreme Court as a right of occupancy to certain lands held by the

James T. Ford (argued), Philip V. Sarkisian, Sacramento, Cal., for defendants-appellants.

William B. Shubb, Asst. U. S. Atty., (argued), Dwayne Keyes, U. S. Atty., Sacramento, Cal., for plaintiff-appellee.

Before BROWNING and GOODWIN, Circuit Judges, and WILLIAMS,* District Judge.

WILLIAMS, District Judge:

Defendants Ross Montgomery and Gordon Montgomery were convicted in the Eastern District of California of violating 18 U.S.C. § 1852. The statute provides in relevant part:

> "Whoever cuts or wantonly destroys any timber growing on the public lands of the United States . . . shall be fined not more than $1,000 or imprisoned not more than one year, or both.

> This section shall not prevent any miner or agriculturist from clearing his land in the ordinary working of his mining claim or in the preparation of his farm, for tillage, or from taking the timber necessary to support his improvements, or the taking of timber for the use of the United States; nor shall it interfere with or take away any right or privilege under any existing law of the United States to cut or remove timber from any public lands."

Defendants admit cutting down a tree on public lands but contend that they have a right to do so as members of the Pit River Indian Nation. This right, it is argued, stems from the aboriginal title claimed by the Pit River Indians in the public lands where the violation occurred.[1]

The trial court held that the aboriginal title of the Pit River Indians to these lands has been extinguished. Citing a judgment of the Indian Claims

Indians that is not recognized as ownership and may be terminated by the United States without compensation. Tee-Hit-Ton Indians v. United States, 348 U.S. 272, 75 S.Ct. 313, 99 L.Ed. 314 (1955).

Commission, the trial court found that the "Indian title" was legally extinguished (1) by the Private Land Claims Act of 1851 and (2) by the physical conquest by concentrated military action culminating in the Battle of the Infernal Caverns in 1867. [Memorandum and Order, at page 2, citing Pit River Indians v. United States, 7 Ind.Cl.Comm. 815 (1959)].

The defendants argue vigorously that the ruling is in error. However, this court need not express an opinion on the relative merits of these arguments as Congress did not intend to exclude the Pit River Indians from the proscriptions of 18 U.S.C. § 1852. A careful reading of the statute reveals that it was drafted by Congress with precision. It contains specfic exemptions for miners, farmers, and the United States. Aboriginal title is not exempted and defendants have not cited relevant authority to support their contention that it is a right or privilege within the meaning of 18 U.S.C. § 1852. In addition, the court notes that Congress has enacted a complex legislative scheme controlling the removal and sale of timber from Indian lands without reference to a right of aboriginal title. See 25 U.S.C. §§ 196, 399, 406 and 407.

The convictions are affirmed.