No. 72–6612. MONTGOMERY *v*. UNITED STATES; and No. 72–6840. MONTGOMERY *v*. UNITED STATES. C. A. 9th Cir. Certiorari denied. Reported below: 476 F. 2d 623.

MR. JUSTICE DOUGLAS, dissenting.

Petitioners are members of the Pit River Indian Nation who, in order to construct Indian-style buildings, felled one ponderosa pine growing on the public lands of the United States, but within the original boundaries of the lands occupied by their ancestors. They were prosecuted under 18 U. S. C. § 1852, which provides in relevant part:

"Whoever cuts . . . timber growing on the public lands of the United States . . .

. . . . .

"Shall be fined not more than $1,000 or imprisoned not more than one year, or both.

"This section shall not prevent any miner or agriculturist from clearing his land in the ordinary working of his mining claim, or in the preparation of his farm for tillage, or from taking the timber

necessary to support his improvements, or the taking of timber for the use of the United States; *nor shall it interfere with or take away any right or privilege under any existing law of the United States to cut or remove timber from any public lands.*" (Emphasis added.)

In their defense, petitioners claimed that the original "aboriginal title" or "Indian title" to their ancestral tribal lands constituted a right recognized by existing law. The Court of Appeals dismissed this claim, reasoning that the specific exemptions granted miners, farmers, and the United States negatived a reading of the "existing law" clause which would include ancestral title, and noting that there was no "relevant authority" for the defense raised by petitioners.

There is, of course, no "relevant authority" for petitioners' claim, because the issue of whether the "existing law" clause of 18 U. S. C. § 1852 reaches aboriginal or Indian title has not been previously litigated.

But this Court has often held that the occupation of property by Indians' ancestors gives rise to Indian title, which, though not a property interest subject to Fifth Amendment protections, encompasses the right to occupancy and use—the right to fish, to hunt, and to cut timber sufficient for use on the land. See, *e. g., Tee-Hit-Ton Indians* v. *United States,* 348 U. S. 272, 279; *United States* v. *Santa Fe Pacific R. Co.,* 314 U. S. 339, 345; *United States* v. *Cook,* 19 Wall. 591, 593–594; *Johnson* v. *M'Intosh,* 8 Wheat. 543, 574, 584, 591 (Marshall, C. J.). This, I think, is a right recognized by the "existing law" of the United States.

A question strikingly similar to the issue in this case arose in *Cramer* v. *United States,* 261 U. S. 219, where a land grant by the United States to a railroad excepted lands "reserved . . . or otherwise disposed of." Some

of the land encompassed by the grant was occupied by three individual Indians. The United States, on behalf of the Indians, argued that the words of the exceptions clause, though obviously general, nonetheless encompassed the right of occupancy of the Indians. The Court, finding the occupancy of the individual Indians closely akin to the "original nomadic tribal occupancy" relied on by petitioners in this case, agreed with the United States because "[u]nquestionably it has been the policy of the Federal Government from the beginning to respect the Indian right of occupancy." *Id.*, at 227. The Court held that the "fact that such right of occupancy finds no recognition in any statute or other formal governmental action is not conclusive. The right, under the circumstances here disclosed, flows from a settled governmental policy." *Id.*, at 229.

As the Court stated in 1912,

> "[I]n the Government's dealings with the Indians . . . [t]he construction, instead of being strict, is liberal; doubtful expressions, instead of being resolved in favor of the United States, are to be resolved in favor of a weak and defenseless people, who are wards of the nation, and dependent wholly upon its protection and good faith. This rule of construction has been recognized, without exception, for more than a hundred years . . . ." *Choate* v. *Trapp*, 224 U. S. 665, 675.

I see no reason why, in our time, that rule of construction should be nullified in the absence of any affirmative showing that Congress chose not to recognize aboriginal Indian title as a defense to 18 U. S. C. § 1852. Considering the solicitude of the Federal Government for Indian title in the past, the Court of Appeals arguably was in error in rejecting the claims of the petitioners

when it could find no "relevant authority." I would take the case and put it down for oral argument.